Thank you, Your Honor. Good afternoon and may it please the court. My name is Emily Sir and I represent the appellant, Santa Maria Police Dept. Officer Christopher Green. At this time, I'd like to request two minutes of my time for rebuttal. Officer Green is entitled to qualified immunity not only because his actions were clearly... I apologize. ...but because they did not violate clearly established law. As shown by the lack of cases in support, there is no clearly established right for a potentially armed violent felon... ...who is actively resisting arrest to be free from moderate force when such force would protect the public from harm. Which is exactly what happened here. No case identified by the district court or by plaintiffs suggests otherwise. Rather, several cases cited by defendant Chris Green in the briefs stand for the proposition... ...that when a fleeing suspect is apprehended by a canine and that suspect is believed to be armed and dangerous... ...it is objectively reasonable and within clearly established law for the officers to allow the dog to remain on bite... ...until the suspect can be checked for weapons and secured. For example, we see this in several cases, again, that were cited. There's the Collins case, which is a 2019 case out of Arizona... ...in which the district court found that it did not violate clearly established law... ...to allow a dog to remain on bite for one to one and a half minutes... ...during which time the officers ensured that the suspect was not armed. There, similar to here, the officers had reason to believe that the suspect was armed and dangerous... ...and that he posed an immediate threat to the public in that he was moving towards an occupied home. Similarly, we know that... Can I ask you this? Just let's speed up the timeline... ...because I think all that the plaintiff is complaining about is the very end of the encounter. So he's lying on his stomach. He has his hands behind his back. So at that point, the officers can clearly see he does not have a weapon in his hands, at least at that moment. He is, as I understand it, according to his version of events, surrounded by police officers... ...at least two, maybe three, maybe more police officers. He is up against a wall, essentially, so there's nowhere where he could easily flee. Tell me why at that point would it be reasonable to continue using the dog... ...when the threat of his being armed and his threat of escape is essentially nil at that point. Yes, John, thank you for the question. At this point, which is kind of the crux of the case... ...we have 13 seconds from the point where the dog initially engaged until he released... ...during which time Officer Green and the other officers had to catch up. And then once they caught up, it's undisputed that they engaged in a back-and-forth with Palmer. Palmer continued kicking at the dog. Palmer continued to engage in a verbal back-and-forth. He did eventually, as you point out, comply. He rolled over and he had his hands behind his back. That is the first time in that 13 seconds where his hands are visible. And it's undisputed that at that point, Officer Green moved to handcuff him... ...and as soon as he was handcuffed, released the dog. The reason why it was appropriate to keep the dog on for that last portion... ...is because the dog is the only reason that Palmer is still compliant. Palmer complains about being up against the wall, but it was the dog that was keeping him up against the wall. Similarly, Palmer had not been checked for weapons. Based on his history that was well known to the officers... ...and on the actions that he had just displayed of leaping off a second floor... ...escaping from a fully armed SWAT team... ...it would be unreasonable to suggest that Officer Green and even two or three other officers... ...just by pointing their weapons at him, would gain compliance. Thus, even though he's on his back with his hands showing... ...there's nothing to suggest that if they had let the dog release... ...that he wouldn't simply stand up or reach for a weapon that was somewhere on his body... ...that we hadn't searched or that the officers hadn't searched. So, Counsel, how many other officers got there before Officer Green tried to get Balco off? So, Your Honor, this is a point of dispute, and I'm trying to use the facts most in favor to Palmer. Okay. For Officer Green, it was only Officer Green. He waited to do the handcuffs until one other officer arrived on scene. For Palmer, he said that after Officer Green arrived, other officers arrived... ...although he does not specify how many. And it is undisputed that those other officers were not the SWAT team. So it's unclear. So in the appellee's view, how many seconds are there between when these officers arrived... ...and when the appellee was handcuffed? Are we talking about four seconds, five seconds, six seconds? In the light most favorable to him, how many seconds of the 13 are we talking about? So Mr. Palmer was not able to put an exact number on those amount of seconds. He doesn't dispute the 13 seconds overall. But he cannot say how many seconds it was for that last portion where he had rolled over. But presumably it would be a matter of seconds based on all the other things that had to happen within that 13 seconds. So was the 13 seconds the entire time Balco was engaged... ...or the time between when Balco became engaged and when the officer first tried to get him off? The entire time he was engaged, Your Honor. So that included the time when for a few seconds he was unsuccessful in immediately disengaging Balco? Exactly, Your Honor. Exactly. So we have in this 13 seconds Officer Green undisputed. He had to catch up, during which time he had to slow down to round corners... ...because Mr. Palmer and Balco had made it outside of the courtyard. And he had to make sure that Palmer wasn't waiting in ambush. So by the time he gets out there and then whatever officers arrive... ...we still have the back and forth where Palmer admits that he refused to comply with orders to roll over. Then, yes, at some point he does finally roll over, show his hands... ...and it's going to be a matter of seconds there before he's handcuffed and the dog is called off... ...at which point the force ends, even if the dog didn't immediately pull off, which we see in Beecher. Counsel, is it in the record anywhere as to California law on whether, in the absence of Balco... ...the officers could have used deadly force to subdue the Appley? I don't believe that's in the record, Your Honor. However, based on the circumstances, it is reasonable that because of the proximity of civilians in the area... ...because of the potential, the strong potential that Palmer was armed at the time, his violent history... ...his propensity to carry weapons and to be on drugs, that had Mr. Palmer been allowed to escape a second time... ...meaning if they had pulled the dog off early and he had again gotten up and run towards his car where he had a loaded weapon... ...or towards the crowd where he could have done any number of things... ...then it is very likely that the officers would have had to use and would have been justified to use more extensive force. For example, deadly force, if they felt that was what was required in order to save those civilians or to protect themselves. So in actuality, keeping Balco on by protected not only the public and the officers, but it protected Mr. Palmer from further harm. He ended up with nine stitches. If he had been allowed to get up and run away again, which everything that he had done that day and three days prior when he escaped... ...demonstrated he was going to do, then further force would be used against him, which could have been much more severe. If the dog had been released and then Palmer had tried to get up and run, couldn't the dog have been told to bite again at that point? Yes, Your Honor, of course he could. But at this point, when you're looking at cases, say like 2B Gates, where the arm is nearly ripped off, a lot of these dog cases involve serious injuries. Here we have nine stitches because the dog didn't have to re-engage. Had the dog had to tackle him a second time, re-engage and hold him down again, now we're at the street where there's potential for cars, more civilians... ...then the damage could have been a lot worse than it actually was. And again, I will point that case law supports that it is reasonable to keep the dog on by until the suspect is in handcuffs for these very reasons. That we don't simply have to trust when a suspect says he's compliant. If we have evidence that shows that he's violent, that he's hell-bent on escaping... ...all the things that Mr. Palmer demonstrated are the same things that we see in Miller, in Collins, in Crenshaw... ...that say there's no reason that an officer has to just trust that now that you let the dog off, he's going to lay there and continue to be compliant. I would like to ask that I keep the remaining 30 seconds for my rebuttal, if possible. Sure. No, we'll make sure you have your two minutes. Let me ask you just one last factual question. At the moment that Mr. Palmer rolls over onto his stomach and puts his hands behind his back... ...according to Palmer's account, where is your client at that moment? Officer Green? I believe per Palmer, Officer Green was either still on top of him, because Officer Green had pinned him, or he's handcuffing him. It is undisputed that as soon as he put his hands behind his back, Officer Green did move to handcuff him, so he's in that vicinity. Okay, but the fact that your client is on top of Palmer suggests that there was no risk that he could simply stand up and run off again, right? There was when Officer Green had to remove his body weight in order to handcuff him. He couldn't remain...he wasn't straddling him or anything like that. As he had described it, he used his upper portion of his body to sort of lean on Palmer's upper portion while the dog held down his legs. In order to handcuff him, he had to lift his body off and maneuver the hands, at which case if the dog is not holding his legs, he could simply get up again. Or worse, reach into his pants, pull out a weapon, and hurt Officer Green. Got it. Okay, thank you very much. We'll give you your time for rebuttal. Let's hear from Council for the plan. Good afternoon, Your Honour. May it please the Court, T.J. Kaye-Konce for Appellee Plaintiff Palmer. One of the facts, one of the things that we alleged here, which has not been contracted, was that the dog continued on bite even after Palmer was handcuffed. So at that point that he was handcuffed, there was no need for the continued bite. But isn't the evidence undisputed that as soon as he was handcuffed, Officer Green tried to get Balco off? No, Your Honour. They eventually yanked Balco off after he was handcuffed, but there was a period of time that elapsed before Balco was able to be taken off. At the time that Balco was on him, what is undisputed is that approximately 90 seconds elapsed at the point when Mr. Palmer was apprehended. At that 30 seconds, he was already on his back and was handcuffed. We had the evidence in the records when Palmer asked the officer what happened, and he said, well, the dog did not comply. So could I ask you to clarify, I couldn't really tell from your brief whether you were saying this time after he was handcuffed, when the dog was still biting, was because the dog didn't follow commands or because the officer intentionally kept the dog biting? Well, the dog was biting for some time, then before they tried to yank the dog off. So they were now giving him, it was when they gave command, let go, let go, and the dog would not let go. That was not when they yanked the dog off. And so is your claim focused on that time when the officers were saying let go, but the dog did not let go? No, the claim is focused on when first he was down, and there was no need for the dog to remain. At that point, he was harmless. That's the point. Sorry. How many seconds? No, I'm sorry. How many seconds? The total dog was on him for 13 seconds. So how many seconds were there, in your view, of the 13 that violated your client's constitutional rights? How many seconds of the 13? So we're looking at the entire 13 seconds, because by the time the officers arrived at the scene, Mr. Palmer could not run. He did not pose any threat of harm to anybody. By the time the officers arrived... Why is that? If Balco had been never engaged with him, or there were none of these 13 seconds that Balco was engaged with him, I don't understand that if the dog wasn't on for any of the 13 seconds, then couldn't your client have just run away? Well, you know, remember that at that time, he was back to the wall. So there was no way he could go. He was back to the wall, and he was trying to say, stop the dog. And his hands were there. So it was like sort of passive resistance. He was back to the wall at the time the officers got there. And subsequently, he rolled over to his back, and he's had his hands behind him. And the dog continued with the attack. So when you have someone back to a corner, there was nowhere to go, and you have a dog attacking him, the officers at that point could have pulled Balco, because Mr. Palmer at that time had been subdued. So is the difference between, in your view, that they didn't pull the dog right away rather than commanding the dog? No, well, they could have done both. It doesn't stop them from either pulling the dog away or commanding the dog, because one, there were several officers who were there, and they were all armed. Mr. Palmer was now back to a corner. So he couldn't escape. He couldn't run. I guess I'm just struggling with whether part of your argument is that the officers are at fault for the time period in which the dog did not follow their commands. Well, yes, at the time the dog could not follow their command. And also, at that point, you have a dog you're working with. You call the dog, he could not follow your command, then you have the option of pulling the dog off. They did not do that. So the dog continued on bite, even after Palmer had been handcuffed. So even if we concede for the sake of argument that, OK, they are not liable for the dog disobeying them, then what did they did not take any affirmative step even after Palmer was handcuffed and was lying on his stomach? So in your view, there was some time after he was handcuffed and after the dog was commanded to get off, but didn't there was still some time when they left the dog there before pulling the dog off after all those things? Yes, your honor. And that was what I was always presented that, yeah, you said a hundred and three seconds. And when my expat was deposed and that question was asked about the dog barking and he said, yes, based on his experience, there are instances where, yes, the dog actually was still on bite and was still making the barking sound. So where I had maybe I just didn't understand this, but is there somewhere I can look in the record where it's clear that this is the timeline that your client describes? Because I had a lot of trouble figuring out if there really was this time period or not after both handcuffing and the commands, like how much time had passed then. Yeah, my client could not give how much time had passed after that because of the excitement of the moment. So, I mean, if you're being attacked, one second could look like forever. But in the record on excerpts on volume two, page 158 to 159, 189 to 192, it did say that after he was handcuffed, that Balco continued to bite him. Right, but that's but but that's they were telling Balco they were trying to get Balco off and there were a few seconds where Balco didn't follow the command. And isn't that what your client was referencing the time Balco stayed on even after he was commanded to get off? I, you know, it's something that happened, not necessarily so. And I think that's where we need to have a jury to resolve that particular issue. Because when we're talking about time, my client cannot actually say how much time that elapsed. But all we know was that Balco continued to bite. When when the officers first came came to the scene, there was an attempt to give Balco instructions to get off him. Balco did not comply. They kept on the incident. It was a series of. So so council before your time has expired, give me your best case as to what put the officers on on notice other than at a high level of generality that their conduct violated your client's constitutional rights of the of the cases you've cited in your brief or any other case. What is the best one you want to point to that gave the office gave Officer Green notice? Yes, you know, there's a case. I'm not sure if we cited it. The Prius stop based on the city of Rivera Beach is an 11 second case. But in in two, the court said the record does not reveal an articulable basis for believing that Chu was armed or that he posed an immediate threat to anyone's safety. I mean, doesn't doesn't that take two out of the equation immediately? You know, but if you look at it, it's very well when you look at even the word from I believe is Watkins, where it says that no particularized case law is necessary for a deputy to know that excessive force has been used when a deputy six, a canine on a handcuffed arrestee. When somebody is already on, he's been handcuffed. He cannot move. He doesn't pose any immediate threat. So even if even if even if that were true, Falco was not sick, which is, I believe, the word used by the case on your client while he was handcuffed. He was he was commanded to stop your client before your client was handcuffed, right? He was commanded. That is very unclear from the records. At what point they asked him, because all we're saying is that there is a whole set in seconds. But I'm saying that we don't even need a specific case law on point to say that when someone is on his stomach, he has both hands on his back. You have handcuffed him and the dog continues to bite. That's the fact. And that's what that's what we're saying happened in this case. If the officers had ordered the dog to get off, though, immediately when the handcuffs went on, do you think there would be a violation after that point? If the officers had ordered the dog to be off by once he was handcuffed and the dog failed to comply and the officers did nothing for some time, they let the dog stay on by before then attempting to pull the dog off. Yes, there's a violation. So we're looking at. Yes, you asked the dog to stop. The dog refused to stop. He continued on bite. You did not do anything. You left that for some time. You remained on bite. Then you yanked it out. Yes, there is a violation in that case. But we're saying that even at that, that the violation started prior to that, before we got to that point where he was on his back and had been handcuffed, that the dog should have been taken off when he was backed into a corner and all he was just struggling was to get free of the dog. At that point, they should have pulled the dog. And it wasn't just one officer. There were several police officers. Where was he running to? I mean, you have he was surrounded. Yes, there is a violation in that case. There is no question that it is undisputed that Officer Green attempted to pull Balco off as soon as Palmer was in handcuffs. As to whether or not there was a violation after that point, I think Beecher makes very clear that as long as the dog is trained and the orders given, then there's no violation. Mr. Palmer has pointed to no case that would say otherwise. I would also like to address the being backed in a corner. If Mr. Palmer was not in a corner, he was against a wall on the outer side of the courtyard of the travel lodge. Again, had the dog released, he would no longer be backed up against that wall. He has three sides open to him. And the suggestion that officers with guns could keep him there is belied by the very fact that the entire SWAT team was armed and he simply leapt over a second floor balcony and ran as fast as he could to get away from that. I'd also like to address the cases that he mentioned were clearly established. Watkins suffers from the same issues that Chu does. In Watkins, there was a silent alarm in which the officers had no reason to suspect that the plaintiff was armed or dangerous or knew anything about him. Unlike all the cases that we cited and the case at hand, they knew that Palmer was a violent felon who was found to carry weapons and were told that on the day of the incident was in possession of a weapon. So for these reasons, we would ask that the 9th Circuit reverse the district court's denial of summary judgment and find that Officer Green was entitled to qualified immunity here on both fronts. Thank you. Thank you, counsel. It's just argue to submit it to the next case. Excuse me. Oh, yes. Yeah. The case is submitted. Yes. Thank you.
judges: Watford, Friedland, Bennett